We'll next move to Appeal 23-1228 Ealy v. Watson, and Mr. Redman will begin with oral argument from you. Thank you, Your Honor. May it please the Court. My name is Caleb Redman, here on behalf of Courtney Ealy. This case is about the due process rights that prison officials owed Mr. Ealy before they imposed months of harsh disciplinary segregation. The case is before you now because the District Court made two fundamental errors. First, the District Court erred when it granted the prison official's motion for summary judgment based largely on supposed evidentiary gaps that Ealy never had a chance to address. Second, the District Court erred when it denied Ealy's motion for recruitment of counsel, including because the District Court did not address many of Ealy's limitations that impeded his ability to represent himself. For either reason, the judgment below should be vacated. Unless this Court has a different preference, I'll begin with the summary judgment issues. In its summary judgment order, the District Court found that the conditions of Ealy's confinement were not severe enough to implicate due process, and that even if they were, due process requirements were satisfied. At each step, that analysis is flawed. Starting first with the conditions of confinement, the District Court made several errors, including that the District Court raised arguments and evidentiary issues that had not been argued in the moving papers for summary judgment. The prison officials did not challenge that Ealy had become cold when the heating in his cells went out in October. They did not challenge that those conditions were endured for long enough and were harsh enough that they made Ealy sick. They didn't challenge that Ealy's cell had become unsanitary due in part to plumbing problems. They didn't challenge that Ealy had a mental health crisis. They didn't challenge that Ealy's eyes had been permanently damaged by the conditions of confinement. Yet, and without notice to Mr. Ealy, it was exactly those issues that the District Court brought up on its own and found that Mr. Ealy's evidence was vague, not sufficiently supported by medical records, and was too general. Those are issues that had they been raised in the moving papers, Ealy could have responded to appropriately with declarations or an affidavit as necessary. But as it stands now, Ealy never had that chance. Mr. Redman, there were a number of occasions when there might have been a failure to follow up on evidence or request evidence by your client. I presume, to that point, you would add that that goes directly to your second argument, the recruitment of counsel. Is that correct? It definitely does go to the recruitment of counsel, Your Honor, but I would also point out that at several points, at least three times in the record, when requesting counsel, my client did flag these evidentiary issues and said, for example, this was in the fourth motion for recruitment of counsel, that plaintiff has trouble understanding how to complete the production of documents. The opening line of the fourth motion, it's at docket entry 32, the opening line is defendants has not disclosed plaintiff-relevant medical records as their response says N.A. So here it's clear that my client is trying to get these medical records and that he was not able to get them. And he makes these sorts of evidentiary points throughout. And that definitely goes to the recruitment of counsel point, Your Honor, and does show that he did, in fact, need counsel to help with some of these evidentiary issues. And just on that point while we're there, the district court never actually analyzed whether Mr. Ely could complete discovery on his own. And as this court has acknowledged, discovery, of course, is more complicated than ordinarily inmates can handle on their own. So that, at minimum, had to be analyzed. Is there a copy of the prison disciplinary record in the record? Yes, Your Honor. Do you happen to know the site? I don't want to put you on the spot. I can pull it up, Your Honor. All right. Thank you. Just take a second here. And that would be included in the prison official's moving papers. So I have it at appendix 33. Thank you. And so, Your Honor, in this summary judgment issue, so the district court was raising these arguments that Ely didn't have a chance to address. And there are other issues with the conditions of confinement analysis, and we bring that up in our briefing. But separate and apart from the conditions of confinement analysis, the district court was also wrong when it said that the prison officials had accorded due process and it satisfied the due process requirements. There are at least two ways in which the prison officials fell short on this score. One is that they did not allow Mr. Ely to see the video surveillance footage. And this court, in the Piggy case, has made clear that prison officials can certainly withhold that sort of footage. But they have to first come forward with an adequate explanation, such as a security justification. There has been no such explanation here. All we know is that Ely did not have the chance to view that video footage. And that was a denial of due process. And the prison officials also denied due process because they did not adequately explain themselves. The Redding case makes clear that simply copying and pasting an investigatory report falls short of an adequate statement. And that is exactly what the prison officials did here. They found Mr. Ely guilty, and their only explanation was, staff report indicates, and then they copied and pasted what the staff report said. That is not a finding of fact. It is simply reporting the news. It is not an explanation of what they were thinking or why they discredited what Mr. Ely had to say. It just falls short. That analysis is controlled by Redding, which is virtually on all fours with this case. And so in both those respects, both with respect to the conditions of confinement and with the due process that was owed, the district court's summary judgment order fell short. But your honors, even apart from that problem, which this court doesn't have to reach, actually, there was the recruitment of counsel issue. And I will point out that several times, including the DeWitt case, and I believe James v. Ely as well comes to mind, this court will sidestep the summary judgment issue altogether and simply analyze the recruitment of counsel. So that option is available to this court. And the recruitment of counsel issue is a clear one. So under this court's holding in DeWitt, the district court was obligated, must address, to use this court's language, obligated to consider each of Ely's limitations that he raised in his motions for recruitment of counsel. Ely flagged that he had minimal education, that he had no experience in civil litigation, that he also had trouble focusing due to his medication, that he was also having trouble with the case due to COVID restrictions. The district court analyzed none of these factors. The district court also didn't analyze whether Mr. Ely was competent and able to proceed through litigation, notwithstanding the fact that the case had moved on to discovery. None of those were analyzed at all. For that reason alone, under this court's case law, the district court abused its discretion. In the district court's final three orders denying recruitment of counsel, the district court entirely overlooked the required analysis of Mr. Ely's ability to represent himself. It just isn't there at all. And in fact, in several of those orders, the district court based its analysis partly on a pure mistake. The district court said that Ely's case did not involve medical conditions when Ely had said repeatedly, I need help with discovery, including because of these medical issues. And the district court just made a mistake there. We know the district court made a mistake because the complaint says that Ely became sick due to the conditions of confinement, that his eyes had been permanently damaged and that he had suffered a mental health crisis. We also know that the district court was mistaken because the district court itself, at the summary judgment stage, twice faulted Mr. Ely for failing to provide medical support for his claims. This case did involve medical conditions. That was critical to supporting Ely's claim about the conditions of confinement. And the district court overlooked that and based its denials on a simple error. That too, under this court's decision in Walker, is an abuse of discretion. So the district court abused its discretion in each of those three ways, by overlooking some of the limitations, by completely failing to analyze in some of its orders the competency of Mr. Ely's ability, and by basing its decisions on just simple error. And these errors prejudiced Mr. Ely. This court has found in Pruitt that to determine prejudice, the court can look to mistakes that were made by the inmate. And here, the district court found that Ely made mistakes because he just didn't support his claims sufficiently. That is exactly the sort of thing a lawyer could have helped with. If I had been involved in the case then, I think my first argument would have made that no one was challenging those conditions that Ely had alleged. But I think the second one, a belt and suspenders approach, which lawyers use all the time, would be to support some of those claims with additional evidence, such as an affidavit or declaration. Mr. Ely didn't do that for the reasons that he said. He just had these limitations and inexperience and didn't know what was going on. He said all of that. So all of those errors that the district court made truly prejudiced him and is the reason we're here today. Because the district court made these errors at summary judgment and the recruitment of counsel stage, the judgment below should be vacated. Would you like to reserve the remainder of your time? Yes, Your Honor. Thank you. Thank you, Mr. Redman. Ms. Brown will now move to you for argument on behalf of the appellee. Good morning, Your Honors, and may it please the Court. I am Assistant Attorney General Megan Brown, and I represent the State Defendant's Appellees. This Court should affirm the district court's grant of the defendant's motion for summary judgment for two separate reasons. First, Ely failed to provide enough specific facts to allow a reasonable jury to find that defendants in this case deprived him of a protected liberty interest. And secondly, and separately, even if defendants' actions implicated a protected liberty interest in this case, this Court's case law makes clear that Ely received all the process that he was due at his Adjustment Committee hearing. Additionally, this Court should find that the district court did not abuse its discretion when it denied Ely's motions for recruitment of counsel. I would like to begin by discussing the very first part of the due process analysis, whether defendants' actions implicated a protected liberty interest. Under this Court's case law, a six-month stay in disciplinary segregation does not typically constitute an atypical and significant hardship such that a liberty interest is implicated. Instead, when a relatively short disciplinary stay occurs, the inmate must establish exceptionally hard or extreme conditions to show that an atypical and significant hardship was experienced. In this case, Ely simply did not come forward with specific enough facts to show an atypical and significant hardship. My friend on the other side points out that the State did not challenge below the conditions of Ely's cell. We did not challenge the cold. We did not challenge the odor. We did not challenge the fact that there was a bird's nest on the outside of his cage in Lawrence that resulted in a darkened cell. However, we did challenge on docket number 58, page 7, the second paragraph, the severity of these conditions and whether or not the severity of the conditions established an atypical and significant hardship. Ms. Brown, when we're talking about that particular test, we're talking about it in the first three months of the six months. Is that correct? Yes. Well, the first month that Ely spent in this discipline was actually an administrative segregation. The following two months, well, the following approximate month was spent at Western, which is where the cold was and the plumbing issue with the odor. And the next three months, Your Honor, was at Lawrence where there was a bird's nest on the outside of the cage and there was this purported eye issue. But it was Ely's responsibility at summary judgment to set forth specific facts showing that there was a genuine issue for trial. And he did have the opportunity to tell his side of the story before the district court. He submitted a declaration along with his response to the defendant's motion for summary judgment. He laid out some facts in that declaration, including that it was cold, including that there was an odor. And he did set forth as an attachment portions of his deposition as evidence. But those vague statements on their own cannot establish a liberty interest such that he In addition, let me see. Yes, so those facts alone cannot establish that there is summary judgment here. We think this case is closer to Lyle versus Wellborn than it is to some of the cases that are cited in Ely's brief here on appeal. Lyle versus Wellborn was a case in which the inmate said that he was experiencing hard But the court decided that those vague statements alone could not suffice to allow him to go past summary judgment. This is as compared to a case like Gillis versus Glitcher, which is cited with approval by Ely in this case, in which the defendant was able to show, using his own words, exactly how hard the conditions he suffered were. It was cold in that cell. But instead of saying real cold or very cold, the defendant was able to explain that he He lacked bedding. He lacked mattress. He had to pace for 14 hours a day to stay warm, such that his feet were injured. And he couldn't sleep because of the temperatures. In this case, we have the word cold plus an adjective. And that on its own cannot survive summary judgment. Quickly, I'd like to address a secondary argument we've made here on appeal that we did not make below at the district court, which is that the defendants in this case do not bear any personal responsibility for the deprivation suffered by Ely. The defendants here are two Adjustment Committee members and the warden of Western Correctional Center. And they disciplined Ely to five months in disciplinary segregation, the loss of certain privileges for approximately six months, and a disciplinary transfer to a separate, more secure prison. What they did not intend to do by sentencing him to this typically constitutionally approvable discipline was to sentence him to any harsher conditions. And we think that under Section 1983 law, in which it is extremely consistent to require a plaintiff to establish the personal responsibility of the defendant to the constitutional deprivation, we believe that that was not established here in this case. We also think that on a constitutional level, Daniels shows that only when the state deliberately imposes a deprivation can there be a properly stated claim for a due process violation. If the court does not have any more questions on that liberty interest issue, I'd like to move on to the due process issue here. Even if this court were to find that a liberty interest was implicated by the defendants in this case, or if the court chooses not to address that issue, this court should affirm the district court's grant of summary judgment for the defendants because Ely received all the process that he was due in this case. This court and the Supreme Court have made clear that discipline that affects the circumstances of confinement implicate a lesser liberty interest, and therefore requires a less formal, less adversarial process than discipline that affects the length of the confinement. That requires a more formal, more adversarial process. This has been set out by the Supreme Court first in Wilkinson in 2005, this court in Westerfer v. Neal, I believe, in 2012, and then again in a specific context of disciplinary proceedings in Adams v. Regal earlier this year in January. So in this context, the correct process is informal, non-adversarial due process because Ely's length of confinement was not affected. No good time credits, no earned time credits, whatever you'd like to call them, were affected in this case. He was simply transferred from a restrictive setting, general population, to a more restrictive setting, disciplinary segregation. So under this court's case law, specifically as Judge St. Eve wrote in her concurrence, which was actually the opinion in Adams v. Regal, excuse me, the only thing that needed to be provided to Ely in this context was some notice of the charges against him and the opportunity to present his views before a neutral decision maker. That's happened here. Ely received eight days' notice of the charges against him from the disciplinary report, and then he was able to attend a hearing in front of the adjustment committee and explain his side of the story. He wasn't prevented from telling his side of the story. He was able to argue on his own behalf. He said that the recording, the phone recording in this case, reflected not the import of drugs into the prison, but the import of a debit card, and he tried to argue that if he had brought marijuana into the prison, he would have tested positive for it himself, but because he didn't, he would have been innocent. Ms. Brown, similar question to that I posed to Mr. Redman. Is there a connection between the failure to pursue some of this evidence or be able to secure some of this evidence and then the denials of the motion for recruitment of counsel? There's no question that Ely probably would have done better below with the help of counsel, but that's simply not the standard in this case. We think that at least before the district court, Ely received a lot of the help that he needed. He wanted medical records, but the court at that time did not understand that there was a medical claim at issue in this case. I think it's important to remember that Ely brought a full slew of claims in his complaint and all were dismissed except for this due process claim. So the court was not really on notice that there were medical issues in this case, and I think that that's probably, by looking at the record you can see that it wasn't on notice of the medical issues until, that those medical issues related to the due process claim rather, until after the fourth motion for recruitment of counsel was filed. At that time the court held a hearing in which Ely explained that he wanted some medical records, and then also in his response to the motion for summary judgment, that's where might relate to his due process claim. But I think it would have been fair to note that maybe the district court believed that Ely was still talking about facts that might have gone to an Eighth Amendment claim that had been dismissed at screening in this case. Pruitt v. Moat does not require omniscience. It just requires the court to examine complexity and competency in response to the arguments presented by the plaintiff. Here, Ely could have explained to the district court in any one of his motions for recruitment of counsel exactly why he needed the medical evidence, but all he said was that there were medical issues in this case. He did not elaborate on those. If we're talking about the motion for recruitment of counsel, we would also argue that here Ely was not prejudiced. All of Ely's arguments in this case go to how he would have used counsel to establish that a liberty interest was violated here. But that can't help Ely if Ely received all the process he was due in the disciplinary proceeding, which we argue very strenuously here he did. Informal non-adversarial due process under Adams, Wilkinson, and Westepher is all that was required by the adjustment committee in this case. And to my friend on the other side's statement about Piggy v. Cotton, we disagree that Piggy applies to these disciplinary proceedings where only the circumstances of confinement are implicated. Piggy was decided in 2003, and it was about a case dealing with the length of confinement. So this is a very different type of liberty interest at stake. And to the extent that by citing Chavez v. Roe, which was decided about 40 years ago, that was a statement by the Piggy court that this should apply to all disciplinary proceedings. The Supreme Court's subsequent decision in Wilkinson v. Austin, two years after Piggy, should signal to this court that now, after Wilkinson, there are two different types of process, and Piggy does not apply to the less formal one. So far as I know, there are no cases following Wilkinson that are at least published by this footage to an inmate has been imposed on a disciplinary proceeding in which disciplinary segregation was the discipline, as opposed to good time credits. We also think that Redding is not apposite to this case. In Westepher v. Neal, on page 686, this court makes clear that informal due process does not necessarily require a written decision describing the reasons for an inmate's placement. Westepher was a slightly different context in which inmates were being sent from a medium or maximum security prison to a then existing supermax prison in the state. But I think that the principle applies if a written decision explaining the reasons for placement is not necessarily required, a written decision explaining the reasons for placement in the adjustment committee's own words is also not required by due process in this case. And if the court doesn't have any further questions, we would urge the court, for the reasons stated, to affirm the district court's grant of summary judgment and to find that the district court did not abuse its discretion when it denied Ely's five motions for recruitment of counsel. Thank you very much, Ms. Brown. Mr. Redman, we'll move back to you now for a rebuttal argument. Thank you, Your Honor. Three points. The first is on the summary judgment argument. My friends on the other side are making arguments that they largely did not make below. And this court has made clear, including in the case Costello, the Costello case we've cited in our briefing, that it does not uphold a grant of the summary judgment order based on arguments that were not raised in the moving papers below. And so just to give a couple examples, my friends on the other side acknowledge that they're raising a knowledge issue that was never argued before. They don't acknowledge, but it is true, that they didn't argue, they didn't really challenge the conditions about the cold or the sickness at all. They referred to page, docket entry 58 at page number 7, and this is reproduced at appendix A97, but their argument boiled down to this. Since plaintiff only experienced these conditions, referring to things like the cold and the unsanitary conditions, for at most two months between August and the end of October, this should not be considered an atypical and significant hardship. So there, what they're really focused on is the duration, the at most two months bit. They weren't focused on the cold needing to be further substantiated, which, by the way, this court, of course, could take judicial notice of the fact that in October the outdoor temperatures were dropping to the 30s. They didn't challenge any of the evidence of sickness. They didn't challenge any of that. And so Ely really was not unnoticed that he needed to come forward and beef up the record in any way, shape, or form. So that's the first part. The second part is the process argument. And my friends on the other side say that all the process, all due process requirements were satisfied, and that's just not right. And so one thing my friends on the other side have said is that the due process requirements are lessened in this context. And that's absolutely true and very clear in the case law. But it's also true that Redding was a disciplinary case like this one, where segregation was imposed. There were 18 defendants in the Redding case, but many of them just had disciplinary segregation and were downgraded to C status. That's exactly what's going on here, and yet Redding required an adequate statement of reasons. And one should be required here, too. And my friends on the other side also point to the Adams case. But the Adams case didn't nullify or in any way address Piggy. And that's because the case was just addressing something quite different. Nobody was raising a Piggy-styled argument because the prison officials there had, in fact, given a security reason for withholding the video footage. The case just held that informal proceedings are sufficient. It didn't say that you could not review the video footage if no security reason was given. That's what Piggy addresses. That's why Piggy is on point and should govern here. So that's the process that was due. Finally, the recruitment of counsel argument. My friends on the other side did not point out where the district court addressed Ely's limitations, including his lack of education, his inexperience in civil litigation. All the things I mentioned in my opening. And the reason they didn't is because the district court never addressed those things. Now, the district court's busy. I understand all of that. But this court's case law is very clear that the district court must analyze those sorts of limitations when determining whether counsel should be recruited. The district court did not do so. My friends on the other side also note that perhaps the district court was just confused about the medical condition and that Ely should have come forward and just explained himself better. The district court said Ely was confused. But that doesn't help either. If Ely truly is confused and is saying that he's having trouble communicating things because he doesn't have much education, that is all the more reason to figure out if counsel should be appointed. But in those orders, the district court did not analyze Ely's ability to litigate the case on his own. That did prejudice Ely because the prejudice analysis turns on the mistakes that the inmate made below. And the district court found that Ely made various mistakes, including failure to sufficiently bolster his claims. That's something counsel could have easily remedied. So for those reasons, the judgment below should be vacated. Thank you very much, Mr. Redman. And thanks to you and your firm for accepting this appointment of counsel and your excellent representation. Ms. Brown, thank you for your excellent representation. The case will be taken under advisement. Thank you, Your Honor.